IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70115-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| DEMIKO DEJONE FANT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 9, 2014 |
| | ) | |

BECKER, J. — Impermissibly suggestive out-of-court identification procedures, including showup procedures, violate due process where there is a substantial likelihood of irreparable misidentification. Here, though the eyewitness initially saw the suspect's face for only a couple of seconds, the trial court did not abuse its discretion in admitting evidence that the witness positively identified appellant Demiko Fant at a showup an hour later. The court properly evaluated other factors indicating the reliability of the identification.

The State charged Fant with residential burglary based on eyewitness identification by Jonathan Kim at a showup. Before trial, Fant moved to suppress the identification on the ground that the showup procedure was unnecessarily suggestive. After holding a CrR 3.6 hearing at which Kim testified, the court denied the motion to suppress. A jury convicted Fant as charged.

Fant assigns error to the decision denying his motion to suppress. A trial court's admission of an eyewitness identification of a criminal defendant is reviewed for abuse of discretion. State v. Kinard, 109 Wn. App. 428, 431-35, 36 P.3d 573 (2001), review denied, 146 Wn.2d 1022 (2002).

According to the undisputed findings, Kim's identification of Fant occurred in connection with a reported burglary on September 22, 2011. Around 12:30 p.m., Kim was standing in his backyard when he heard what sounded like breaking glass coming from the direction of his neighbor's home. He walked to the front door and noticed an unfamiliar dark sedan parked on the street with a man in the driver's seat. After a few minutes, Kim watched as several young men walked from his neighbor's property towards the sedan. As they walked, one of the men made eye contact with Kim for one or two seconds. The men got into the car and the driver drove away. Kim followed in his own car for approximately six blocks. While he drove, Kim called 9-1-1 to report a burglary of his neighbor's home. At one point, Kim pulled within 10 feet of the car and relayed the first five digits of the license plate to the police over the phone. Kim went home when the car he was following stopped in the middle of the street and all occupants began to get out. The police met him at his home.

Kim told the police that the person with whom he made eye contact was "a light-skinned African American or Hispanic male, young, perhaps early 20's, with 'frizzy' 'poofy' hair, wearing a white T-shirt." Kim heard that the police identified the registered owner of the dark sedan, that his address was within a mile of

2

Kim's home, and that the owner reported his car was stolen shortly after Kim called 9-1-1.

At some point within an hour of the suspected burglary, an officer asked Kim to leave his home to see if he could identify a potential suspect. Kim agreed. The officer transported Kim to a cul-de-sac in front of Fant's home. The officer told Kim the suspect would be standing outside. Fant was standing outside with another police officer. The car drove by slowly, at a distance of approximately 40 feet. After viewing Fant for approximately 10 seconds, Kim told the officer that he was 100 percent certain that Fant was the man with whom he made eye contact. Kim stated that Fant's hair and clothing were the same. Fant was arrested immediately.

Upon hearing the testimony, the trial court concluded that the showup identification was unnecessarily suggestive, primarily because Kim was aware of Fant's connection to the vehicle he observed. The court nevertheless determined that the identification was admissible because it did not create a substantial risk of irreparable misidentification:

> Here, Kim had a clear view of the suspect in broad daylight, as the suspect was walking across Kim's neighbor's yard, and especially when the suspect turned and made eye contact with Kim for 1-2 seconds. Kim was paying close attention, as he understood that he might be witnessing a crime, and he planned to report it to the police. Kim's description of the suspect to the police, while not terribly detailed, was consistent with Fant's appearance at the show-up identification (including the clothing he was wearing, his skin tone, his hair, and his age), which occurred no more than an hour after Kim first saw the suspect. Any inaccuracies in his description and recollection go to weight rather than to admissibility, and can be adequately addressed in cross examination. And, Kim expressed 100% certainty in his identification of Fant as the person

who had made eye contact with him while leaving his neighbor's yard.

Conclusion of Law 5.

The trial court properly weighed the reliability of the identification, as determined by reference to several factors, against the suggestiveness of the identification. Neil v. Biggers, 409 U.S. 188, 198-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). The factors are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

Fant contends that a proper consideration of the Biggers factors establishes a substantial likelihood of irreparable misidentification. He argues that Kim's opportunity to view the suspect from his yard was insufficient to establish reliability because it lasted mere seconds. He asserts that Kim's attention was divided among the several young men who were walking from the neighbor's house to the car. According to Fant, Kim's description of the young man he observed was too general and its accuracy was undermined by the absence of a reference to facial hair though Fant had a mustache and goatee at the time. Fant also points out that Kim recalled seeing eyeglasses but could not remember whether it was the suspect or Fant who wore them. He concludes that the trial court abused its discretion by allowing the jury to hear Kim's out-of-court and in-court identifications.

The discrepancies noted by Fant are insufficient to compel suppression. The trial court correctly determined that any inaccuracies or inconsistencies in Kim's description and recollection would go to the weight of his evidence rather than to admissibility and could be adequately addressed in cross examination. We find no abuse of discretion.

Affirmed.

_Becker, J._

WE CONCUR:

_Dwyer, J._

_Cox, J._